Filed 7/14/22  P. v. Aragon CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>DANIEL ARAGON,<br><br>　　Defendant and Appellant. | H048398<br>(Monterey County<br>Super. Ct. No. SS081625A) |

Daniel Aragon appeals following the denial of his petition for resentencing under former Penal Code section 1170.95[1] (Stats. 2018, ch. 1015, § 4).[2]  The parties agree that the trial court erred in making certain factual findings and should not have denied Aragon's petition at the prima facie stage.  We concur and therefore reverse the trial court's order and remand with directions.

**I.  FACTS AND PROCEDURAL BACKGROUND**

On April 27, 2009, the Monterey County District Attorney filed an amended information against Aragon and three codefendants (Roman Gasca, Samuel Aragon, and Mike Martinez).  Aragon was charged with two counts of first degree murder (§ 187,

---

[1] Unspecified statutory references are to the Penal Code.
[2] Section 1170.95 has been amended and renumbered as section 1172.6.  (Stats. 2022, ch. 58, § 10, eff. June 30, 2022; see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

subd. (a); counts 1 & 2), two counts of attempted first degree murder (§§ 664, 187, subd. (a); counts 3 & 4), one count of street terrorism (§ 186.22, subd. (a); count 5), one count of gang conspiracy to commit a crime injurious to the public (§ 182.5; count 6), and one count of shooting at an inhabited dwelling (§ 246; count 7). In addition, the information charged Aragon with gang allegations (§ 186.22, subd. (b)(1)) in connection with counts 1, 2, 3, 4, and 7.

Shortly before Aragon's trial was scheduled to begin, on July 22, 2010, Aragon elected (over the objection of his counsel and without a plea agreement) to plead guilty to all the counts and allegations.[3] On a written waiver of rights form, Aragon initialed an acknowledgement that the maximum possible sentence he could receive was 120 years to life, plus three years. The waiver of rights form did not contain any statement of facts about the crimes to which Aragon was pleading guilty or the theory of liability for his convictions for first degree murder.

The probation report prepared for Aragon's sentencing contains a section describing the "circumstances of the offense," (bolding & capitalization omitted) that states it was derived from police reports and information from the district attorney's office. That section describes the killing of two men and the attempted killing of two others on May 25, 2008, by a man yelling gang slogans. The report generally describes Aragon's role in the offenses as the driver of the car in which the actual shooter (or shooters) had been riding immediately prior to the crime. Unidentified individuals who had participated in the crime told an investigator from the district attorney's office that Aragon had helped plan the murders in retaliation for a gang-related shooting but was not the actual shooter in the instant offenses. The report states that Aragon "has expressed extreme remorse for his part in these crimes."

---

[3] There is no reporter's transcript for this hearing in the record on appeal.

On February 22, 2011, the trial court sentenced Aragon. The prosecutor stated at the sentencing hearing, "because Mr. Aragon was not the shooter, he had no record, he pled to everything, he took full responsibility for what he did, he had no deals or anything, I'd ask the Court to sentence him on Count 1 to the statutory sentence of 25 years to life and run all other sentences concurrent except for Count 6, the conspiracy, which would be [section] 654." The trial court denied probation and sentenced Aragon on counts 1 and 2 to a term of imprisonment of 25 years to life, on counts 3 and 4 to a term of 15 years to life, on count 5 to two years, on count 7 to 15 years to life, and on count 6 to 25 years to life, stayed. The court ordered all terms to run concurrently. The court also ordered Aragon to pay fines, fees, and restitution.

On February 28, 2019, Aragon petitioned for resentencing under former section 1170.95 by submitting a preprinted form (petition). By checking various boxes, Aragon alleged he had been charged with an offense that allowed the prosecution to proceed under a felony-murder theory or murder under the natural and probable consequences doctrine, that he pled guilty to first degree murder in lieu of going to trial because he believed he could have been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could no longer be convicted of first or second degree murder because of changes made to sections 188 and 189. Aragon requested appointment of counsel and checked boxes stating he "was not the actual killer," "did not, with the intent to kill, aid, abet, . . . or assist the actual killer in the commission of murder in the first degree," "was not a major participant in the felony," "did not act with reckless indifference to human life during the course of the crime," and stating that the victim was not a peace officer.

On April 10, 2019, the trial court appointed counsel for Aragon on his petition.

The People opposed Aragon's petition. In their written opposition, the People submitted a statement of facts describing Aragon's role in the offenses. The People's opposition states, "The factual basis in this response is taken from the Probation Report,

attached hereto. In the event that the Court wishes to examine more detailed factual evidence in this case, the People can provide the preliminary hearing transcript upon request."

The People argued that Aragon was ineligible for relief under section 1170.95 because Aragon was not prosecuted under a theory of felony murder or of natural and probable consequences but as an aider and abettor to first degree murder. The People asserted Aragon "could absolutely be prosecuted for murder today based upon the same aiding and abetting theory that applied when he was original charged and prosecuted. He assisted [the actual shooters] in these murders, and he did so with the intent to kill. [Aragon] acted with express malice in this case."

Aragon's attorney did not file any papers in support of Aragon's petition.

On June 21, 2019, the trial court denied Aragon's petition. The trial court's ruling on the petition (delivered orally) states, "So having reviewed the petition and the DA's response I find that the Petitioner has not established a prima facie showing. He was not prosecuted under . . . a felony murder theory or the natural and probable consequences doctrine. The evidence was clear that he was prosecuted as a single aider and abettor. [¶] So the petition is denied."

On April 16, 2021, this court granted Aragon relief from default for failing to file a timely notice of appeal and gave him leave to file an appeal within 30 days. On April 21, 2021, Aragon filed a notice of appeal, and this court subsequently appointed appellate counsel for him.

Aragon's appointed appellate counsel filed a *Serrano* brief (*In re Serrano* (1995) 10 Cal.4th 447 (*Serrano*)) in this court that raised no issues. Aragon filed a supplemental brief in propria persona. In his brief, Aragon maintained that he "was the driver and [it] is very clear [he] did not know that his codefendants were going to kill someone when they asked him for a ride." Aragon argued that the "the order denying resentencing must be reversed because premature fact finding contravened the terms of section 1170.95."

4

After reviewing the briefs and record, we requested supplemental briefing on whether the trial court erred in concluding that Aragon had not made a prima facie showing of entitlement to relief and, if so, whether any error was harmless. Aragon's counsel and the Attorney General filed responsive briefs.

## II. DISCUSSION

In his supplemental brief, Aragon asserts that the trial court erred in denying his petition at the prima facie stage because nothing in the record established as a matter of law that he was not convicted of first degree murder on a theory of natural and probable consequences under the law extant at the time of conviction. Aragon requests that this court reverse the judgment and remand the matter to the trial court with directions to issue an order to show cause.

The Attorney General concedes that, as Aragon's petition stated a prima facie claim of eligibility and nothing in the record demonstrates Aragon's ineligibility as a matter of law, the trial court erred in denying the petition at the prima facie stage. In addition, the Attorney General asserts the error was not harmless. The Attorney General maintains that the appropriate remedy is for this court to remand the matter with orders for the trial court to issue an order to show cause and conduct an evidentiary hearing.

We agree with the parties that Aragon's petition presented a prima facie showing of relief, and nothing in the record established as a matter of law that Aragon is ineligible for relief under former section 1170.95 (current section 1172.6). (*People v. Lewis* (2021) 11 Cal.5th 952, 970 (*Lewis*).)

As the California Supreme Court has made clear (in an opinion issued after the trial court's order here), "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [(*People v. Drayton*

5

(2020) 47 Cal.App.5th 965,] 978, quoting Cal. Rules of Court, rule 4.551(c)(1)).) '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' (*Ibid.*, fn. omitted, citing [*Serrano*, *supra*, 10 Cal.4th at p. 456].) 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' (*Drayton*, at p. 979, quoting *Serrano*, at p. 456.)" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

Nothing in the record establishes as a matter of law that Aragon was ineligible for relief. The trial court's finding that Aragon was prosecuted as a single aider and abettor rests on the type of factfinding in which the trial court may not engage at the prima facie stage.

Therefore, this matter must be remanded with instructions to issue an order to show cause and hold an evidentiary hearing. We note that section 1170.95 has been amended and renumbered. (Stats. 2022, ch. 58, § 10.) It now appears at section 1172.6. The provision describing the evidentiary hearing appears at section 1172.6, subdivision (d)(3). It provides:

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to [s]ection 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of [s]ection 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to

6

the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

We decide Aragon in his petition made a prima facie showing that he is entitled to relief, and the trial court erred in not issuing an order to show cause. We therefore reverse the trial court's order denying Aragon's petition and remand with directions to issue an order to show cause under section 1172.6, subdivision (c), and hold a hearing pursuant to section 1172.6, subdivision (d). Upon remand, the trial court should apply current law in its consideration of Aragon's petition. We express no opinion about Aragon's ultimate entitlement to relief following the hearing. (§ 1172.6, subd. (d)(3).)

### III. DISPOSITION

The trial court's June 21, 2019 order denying Aragon's Penal Code section 1170.95 petition for resentencing is reversed. The matter is remanded to the trial court with directions to issue an order to show cause (Pen. Code, § 1172.6, subd. (c)) and hold a hearing to determine whether to vacate Aragon's murder conviction and to recall his sentence and resentence him (Pen. Code, § 1172.6, subd. (d)).

7

_____
                                    Danner, J.

WE CONCUR:


_____
Bamattre-Manoukian, Acting P.J.




_____
Wilson, J.




**H048398**
*People v. Aragon*